# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| MARIO ERNESTO HERNANDEZ DURAN, <br><br> Petitioner, <br><br> v. <br><br> MICHAEL BERNACKE, *et al.*, <br><br> Respondents. | Case No. 2:25-cv-02105-RFB-EJY <br><br> **ORDER** |

Before the Court is the (ECF No. 2) Motion for a Temporary Restraining Order or Preliminary Injunction by Petitioner Mario Ernesto Hernandez Duran. For the following reasons, the Court grants the Motion.

### I.  INTRODUCTION

This case is one of a growing number before this Court challenging the federal government's new policy of mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The policy is based on a new interpretation of the Immigration

---

[1] This Court has already granted petitioners relief in fourteen similar challenges. See, e.g., Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-RFB-BNW, 2025 WL 3014023 (D. Nev. Oct 27, 2025);

1  and Nationality Act (INA) by the executive branch, specifically 8 U.S.C. § 1225(b)(2)(A), as
2  requiring the detention of all undocumented individuals during the pendency of their removal
3  proceedings, which can take months or years. According to this interpretation, detention is
4  mandatory no matter how long a noncitizen has resided in the country, and without any due process
5  to ensure the government has a legitimate interest in their detention.

6  This sweeping new policy, which the Department of Homeland Security (DHS), in
7  conjunction with the Department of Justice (DOJ), adopted on a nationwide basis on July 8, 2025,[2]
8  subjects millions of undocumented residents to prolonged detention without the opportunity for
9  release on bond, in contravention of decades of agency practice and robust due process protections
10 hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Bureau
11 of Immigration Appeals (BIA) issued a precedential decision adopting this new interpretation of
12 the government's detention authority under the INA. See Matter of Yajure Hurtado, 29 I&N Dec.
13 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges no longer have authority to hear
14 bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. Id.

15 The overwhelming majority of district courts across the country, including this Court, that
16 have considered the government's new statutory interpretation have found it incorrect and
17 unlawful. See Escobar Salgado v. Mattos, 2025 WL 3205356, at *11-22 (D. Nev. Nov. 17, 2025)
18 (finding "that the plain meaning of the relevant statutory provisions, when interpreted according
19 to fundamental canons of statutory construction," as well as the legislative history and decades of
20 consistent agency practice establish "that the government's new interpretation and policy under [§

---

Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025 WL 3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-NJK (D. Nev. Oct. 30, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025); Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D. Nev. Nov. 17, 2025); Cornejo-Mejia v. Bernacke, No. 2:25-CV-02139-RFB-BNW, 2025 WL 3222482 (D. Nev. Nov. 18, 2025).

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

1225(b)(2)(A)] is unlawful."); see also, e.g., Rodriguez v. Bostock, No. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice.") (collecting cases).

Petitioner challenges Federal Respondents' application of this policy to detain him without a bond hearing as unlawful under the INA and unconstitutional. Federal Respondents assert that Petitioner has failed to demonstrate his entitlement to relief as his ongoing detention is statutorily authorized by 8 U.S.C. § 1225(b)(2), and that this Court lacks jurisdiction to consider the instant Motion. They fail to address his due process challenge. For the reasons set forth below, the Court finds that Petitioner is likely to succeed on the merits of his claims that his detention is unlawful under the INA and Due Process Clause, that Petitioner is suffering and will continue to suffer irreparable harm absent relief, and that the equities and public interest favor relief for Petitioner. The Court therefore grants Petitioner's Motion and orders Respondents to provide him a bond hearing within seven days.

## II. PROCEDURAL HISTORY

On October 28, 2025, Petitioner Hernandez Duran, who is currently detained in ICE custody at the Nevada Southern Detention Center (NSDC), filed his Verified 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus against Respondents Michael Bernacke, in his official capacity as Field Office Director for ICE; John Mattos, in his official capacity as Warden at NSDC; Kristi Noem, in her official capacity as Secretary of DHS; Pamela Bondi, in her official capacity as Attorney General of the United States; and Rodney Scott, in his official capacity as the Commissioner of U.S. Customs and Border Protection. ECF No. 1. Petitioner concurrently filed the instant Motion. ECF No. 2.

On October 29, 2025, this case was transferred to the undersigned judge as related to two pending putative class actions before this Court. ECF No. 5. On October 29, 2025, the Court ordered counsel for Respondents to show cause in writing why the Court should not grant Petitioner's requested preliminary injunction. ECF 7. Respondents filed their Response on

November 5, 2025. ECF No. 11. On November 11, 2025, Petitioner filed his reply. ECF No. 12. On November 11, 2025, Respondents filed their response to the Petition. ECF No. 13.

On November 19, 2025, the Court ordered the Clerk to strike Exhibit 3 to the Petition (ECF No. 1-3) because it contained personal-data identifiers that should be redacted per Local Rule IC 6-1 and Federal Rule of Civil Procedure 5.2(a). ECF No. 14. The Court ordered Petitioner to refile the exhibit with redactions. Id. Petitioner filed the exhibit with redactions the same day. ECF No. 15. The Court's Order on the Motion for Preliminary Injunction follows.

### III.    BACKGROUND

#### A.    Legal Background

The Court fully incorporates by reference the legal background regarding the government's detention authority and removal proceedings under the INA, as well as the government's challenged new mandatory detention policy, set forth in its ruling in Escobar Salgado v. Mattos, 2025 WL 3205356, at *2-6 (D. Nev. Nov. 17, 2025). The Court finds Petitioner is similarly situated to Petitioners Mena-Vargas and Reyes-López in that case, because Petitioner Hernandez Duran sought a custody redetermination (*i.e.*, bond hearing) after the BIA's ruling in Hurtado. The IJ denied his request on September 29, 2025, concluding that he lacked jurisdiction to consider bond under Hurtado.

#### B.    Petitioner Mario Ernesto Hernandez Duran

The Court makes the following findings of fact relevant to Petitioner's individual circumstances based on the record. Petitioner is a noncitizen born in El Salvador who entered the U.S. without inspection in December 2006 at age 15. Since then, he has resided in the Las Vegas area for almost twenty years and has deep ties to the community. Petitioner worked at L&L Hawaiian Barbecue for approximately ten years before transitioning to work as an electrician, and he has worked as an electrician for the last five years. Petitioner lives with his fiancée and two children. He has been the primary caregiver for his older child, a U.S. citizen, for the past five years after receiving full custody of the child from his ex-wife. His son suffered from neglect and instability in his mother's care, including severe over-medication and hospitalization; Petitioner

worked with physicians to remedy the overmedication over a period of years, and his son now lives healthily without any medication.

It is unclear when Petitioner was detained by ICE, but the arrest appears to pre-date August 27, 2025, based on the letters of support provided by Petitioner's family. The record is also incomplete as it pertains to the initiation of removal proceedings and the stated bases for inadmissibility, removal, and detention by DHS.

Petitioner requested a custody redetermination hearing (*i.e.*, bond hearing) before the Las Vegas Immigration Court. However, citing to Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), IJ Glen Baker denied the request on September 29, 2025, concluding that his authority to set bond had been superseded by Hurtado. The IJ made no individualized assessment as to the necessity of Petitioner's ongoing detention, nor made any finding as to whether Petitioner poses a danger to the community or a flight risk. Petitioner's individual merits hearing within his removal proceedings is currently scheduled for November 19, 2025.

### IV.   LEGAL STANDARDS

#### A. Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain such relief a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

The Ninth Circuit uses a sliding scale variant of the Winter standard: the "serious questions" test. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, "serious

questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." Id. at 1135. Courts in the Ninth Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." Recycle for Change v. City of Oakland, 856 F.3d 666, 669 (9th Cir. 2017).

### B.  § 2441 Petition for Writ of Habeas Corpus

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

### V.    DISCUSSION

The Court issues this Order without a hearing. In the Ninth Circuit, whether to hold an evidentiary hearing or hear oral argument on a preliminary injunction is a matter of the district

1    court's discretion. See, e.g., Stanley v. Univ. of S. California, 13 F.3d 1313, 1326 (9th Cir. 1994)
2    (citations omitted) (refusal to hold a preliminary injunction hearing "is not an abuse of discretion
3    if the parties have a full opportunity to submit written testimony and to argue the matter."). A court
4    may rely solely on the briefing and affidavits of the parties where the urgent need for injunctive
5    relief so requires. Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson, 799 F.2d
6    547, 555 (9th Cir. 1986).

7    Here, the parties have not requested oral argument or an evidentiary hearing. See id. (noting
8    the failure to request an evidentiary hearing may constitute waiver). Additionally, the Court finds
9    there are no disputes of fact material to the request for preliminary relief that would necessitate an
10   evidentiary hearing, and Petitioner has directly assented to a decision on the papers. ECF No. 2 at
11   5. For those reasons and considering the urgent need for injunctive relief, the Court finds a
12   preliminary injunction ruling without a hearing is warranted in this case.

**A. Jurisdiction**

As an initial matter, the Court has habeas jurisdiction to review Petitioners' challenge to the lawfulness of their detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252, do not apply. In evaluating the jurisdiction stripping provisions of the INA, the Court is guided "by the general rule to resolve any ambiguities in a jurisdiction-stripping statue in favor of the narrower interpretation and by the strong presumption in favor of judicial review." Arce v. United States, 899 F. F.3d 796, 801 (9th Cir. 2018) (*per curiam*) (internal quotations and citations omitted).

In their opposition to the Motion for Preliminary Injunction, Respondents first assert the Court lacks jurisdiction over Petitioner's habeas challenge to the lawfulness of his detention under 8 U.S.C. § 1252(g), (b)(9), and (a)(5). As this Court has previously ruled, and which is incorporated by reference herein, Respondents' arguments under those jurisdiction stripping provisions of the INA are foreclosed by Ninth Circuit and Supreme Court precedent. See Escobar Salgado, 2025 WL 3205356, at *8-10.

For the first time, in their response to the Petition, Respondents argue 8 U.S.C. § 1252(e)(3) bars review of Petitioner's claims. ECF No. 13. That provision is entitled "Judicial review of orders

under section 1225(b)(1)." 8 U.S.C. § 1252(e). Subparagraph (e)(3), entitled "Challenges on validity of the system" provides in relevant part:

> (A) In general
>
> Judicial review of determinations under section 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of--
>
> (i) whether such section, or any regulation issued to implement such section, is constitutional; or
>
> (ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.
>
> (B) Deadlines for bringing actions
>
> Any action instituted under this paragraph must be filed no later than 60 days after the date the challenged section, regulation, directive, guideline, or procedure described in clause (i) or (ii) of subparagraph (A) is first implemented.

Respondents argue that because "Petitioner challenges the determination, set forth in writing by both the Department of Justice and DHS, that aliens who entered the United States without inspection are subject to mandatory detention under § 1225(b)(2) . . . Petitioner thus seeks judicial review of a written policy or guideline implementing § 1225(b), which is covered by § 1252(e)(3)(A)(ii)." ECF No. 13 at 3-4.

The Court finds § 1252(e)(3) does not deprive this Court of jurisdiction over Petitioner's habeas challenge for a few reasons. First, the Ninth Circuit has described that provision—in line with the title of § 1252(e)—as applying only to challenges to expedited removal proceedings. See U.S. v. Barajas-Alvarado, 655 F.3d 1077, 1086 n. 10 (9th Cir. 2011) ("§ 1252(e)(3) limits jurisdiction over general challenges to expedited removal proceedings"); E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 666 (9th Cir. 2021) ("Section 1252(e)(3), in short, limits jurisdiction over challenges to regulations implementing expedited removal orders.") (citation omitted). Respondents do not assert that Petitioner is subject to expedited removal. Their argument that § 1252(e) nonetheless applies here thus contradicts the plain text of the statutory provision,

which only applies to "[j]udicial review of orders under section 1225(b)(1)," the provision that governs expedited removal proceedings, not § 1225(b)(2).

Second, the Court finds that the internal 'policy' memo which has been referenced by the parties and this Court, does not constitute a "written policy directive" or "written policy guideline" as identified in Section 1252(e)(3). The memo at issue here was not published or designated in any formal way as 'written policy directive' or 'written policy guideline.' Indeed, this document came to light because a photograph of it was leaked.[4] Moreover, given its focus on statutory construction as applied to a variety of individual factual scenarios, the Court finds it is not the type of policy which would be subject to the jurisdictional and temporal limits noted in Section 1252(e)(3).

Third, if § 1252(e)(3) channeled all as-applied challenges to § 1225 detention authority only to the District Court for the District of Columbia, that section would conflict with the Supreme Court's recent directive that challenges by detained individuals that "necessarily imply the invalidity of their confinement" "must be brought in habeas" and therefore must be brought in the district of confinement. Trump v. J. G. G., 604 U.S. 670, 672 (2025). Accordingly, the Court has habeas jurisdiction over Petitioner's challenge to the lawfulness of his detention.

**B. Administrative Exhaustion**

Although not argued in their Opposition to the Motion for Preliminary Injunction, in their Response to the Petition, Respondents argue the Court should dismiss this case because Petitioner has not appealed the IJ's decision denying him a bond hearing under Hurtado to the BIA. See ECF No. 13 at 8-9. "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." Laing v. Ashcroft, 370 F.3d 994, 998 (9th Cir. 2004). Neither the habeas statute, 8 U.S.C. § 2241, nor the relevant sections of the INA require petitioners to exhaust administrative remedies before filing petitions for habeas corpus. Id. (citing Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir. 2001)).

A court may require prudential exhaustion if: "(1) agency expertise makes agency

---

[4] See Herrera v. Knight, ---F. Supp. 3d---, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792, at *2 n.1 (D. Nev. Sept. 5, 2025)

consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007). Courts may however waive prudential exhaustion if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing, 370 F.3d at 1000. Petitioner bears the burden of demonstrating at least one of the Laing factors applies. See Ortega-Rangel v. Sessions, 313 F.Supp.3d 993, 1003 (9th Cir. 2018).

The Court finds exhaustion would be futile. In Hurtado, the BIA adopted the government's new interpretation of § 1225(b)(2) and held IJs have no authority to consider bond for any individual who entered the country without inspection. That is why IJ Baker declined Petitioner's request for a bond hearing. If Petitioner appealed that decision, the BIA would uphold IJ Baker's denial of bond pursuant to Hurtado, so exhaustion of the appellate process would be futile. See Vasquez-Rodriguez v. Garland, 7 F.4th 888, 896 (9th Cir. 2021) ("We will excuse a failure to exhaust if it is very likely what [the BIA's] result would have been. Thus, where the agency's position appears already set and recourse to administrative remedies is very likely futile, exhaustion is not required.") (cleaned up) (internal citations and quotations omitted); see also Mosqueda v. Noem, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530, at *7 (C.D. Cal. Sept. 8, 2025) (waiving exhaustion as futile because "the most recent BIA decision on this issue has adopted the legal interpretation of the new DHS policy that petitioners challenge.") (citing Matter of Yajure Hurtado, 29 I.&N. Dec. 216 (BIA Sept. 5, 2025)). And importantly, the value of administrative review is minimal here, "where the statutory interpretation question at the center of this case must be resolved by a judicial decision on the merits." Id. (citing Loper Bright Enters. v. Raimando, 603 U.S. 369 (2024)). Because the Court finds the BIA has adopted an unlawful statutory interpretation of the INA, awaiting the BIA's decision regarding Petitioner's ability to have a bond hearing is futile.

Additionally, considering Petitioner's due process challenge to his detention without a

bond hearing, this matter falls squarely into the futility exception to the exhaustion requirement "carved for constitutional challenges to ... [DHS] procedures." Iraheta-Martinez v. Garland, 12 F.4th 942, 949 (9th Cir. 2021) (quoting Sola v. Holder, 720 F.3d 1134, 1135 (9th Cir. 2013) (*per curiam*)) (alterations in original)). As to procedural due process claims in particular, "[t]he key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." Sola, 720 F.3d at 1135. See also Matter of G.K., 26 I. & N. Dec. 88, 96-97 (BIA 2013) (explaining that "[n]either the [BIA] nor the Immigration Judges have the authority to rule on the constitutionality of the statutes we administer[.]").

Moreover, requiring Petitioner to be subjected to unconstitutional detention pending the BIA's decision would cause irreparable harm, which is a separate basis to waive exhaustion under Laing. See Rodriguez v. Robbins, 715 F.3d 1127, 1145 (9th Cir. 2013) (finding irreparable harm in continued detention of noncitizens who would likely be granted conditional release if afforded a bond hearing). Because Petitioner's constitutional challenge to his detention is necessarily beyond the scope of the BIA's review, the BIA's position on the statutory question is already determined against Petitioner under Hurtado, and awaiting the BIA's decision would result in irreparable harm to Petitioner, prudential administrative exhaustion is excused.

### C. Preliminary Injunction

The Court next turns to the analysis of Petitioner's entitlement to preliminary relief under the Winter factors.

#### 1. Likelihood of Success or Serious Questions

First, the Court finds Petitioner has satisfied the most important Winter factor: he is likely to succeed on the merits of his Petition for Writ of Habeas Corpus, because (1) § 1226(a), not § 1225(b)(2), applies to him, and therefore his detention without bond violates the INA and (2) Respondents' continued detention of Petitioner without a constitutionally adequate bond hearing violates Petitioner's procedural and substantive due process rights. See Matsumoto v. Labrador, 122 F.4th 787, 804 (9th Cir. 2024) (Likelihood of success on the merits is the most important factor in a preliminary injunction analysis); see also Baird v. Bonta, 81 F.4th 1036, 1042 (9th Cir. 2023)

1  (likelihood of success is especially important where a plaintiff seeks a preliminary injunction
2  because of an alleged constitutional violation).

3              **i.  *The Lawfulness of Petitioner's Detention Under the INA***

4       The Court fully incorporates by reference its reasoning and holding regarding
5  Respondents' new interpretation of § 1225(b)(2) from Escobar-Salgado. WL 3205356, at *10-26.
6  As set forth in that Order, the Court rejects Respondents' statutory interpretation and finds
7  Petitioner is detained under § 1226(a) and its implementing regulations, because he is a "longtime
8  U.S. resident[ ], who [was] arrested and detained by ICE far from any port of entry." Id. at 22.

9              **ii.  *Due Process***

10      Petitioner also challenges his ongoing detention without the opportunity for release on
11  bond as unconstitutional under the Due Process Clause of the Fifth Amendment. For the following
12  reasons, the Court finds Petitioner is being detained without the opportunity for release on bond in
13  violation of his procedural and substantive due process rights.

14      The Due Process Clause prohibits deprivations of life, liberty, and property without due
15  process of law. U.S. CONST., amend. V. There is no question that these protections extend to
16  noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. _, 145 S. Ct. 1003,
17  1006 (2025) (*per curiam*) ("'It is well established that the Fifth Amendment entitles aliens to due
18  process of law' in the context of removal proceedings . . .") (quoting Reno v. Flores, 507 U.S. 292,
19  306 (1993)); Zadvydas v. Davis, 533 U.S. 678, 693, (2001) ("[T]he Due Process Clause applies to
20  all 'persons' within the United States, including aliens, whether their presence here is lawful,
21  unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021).

22      Noncitizen detainees charged with being in the U.S. illegally are entitled to procedural due
23  process, meaning "notice and opportunity to be heard appropriate to the nature of the case." J.G.G.,
24  145 S.Ct. at 1006 (internal quotation marks omitted); see also A. A. R. P. v. Trump, 145 S. Ct.
25  1364, 1367 (2025). "Procedural due process rules are meant to protect" against "the mistaken or
26  unjustified deprivation of life, liberty, or property." Id. (quoting Carey v. Piphus, 435 U.S. 247,
27  259 (1978). Due process "is a flexible concept that varies with the particular situation." Zinermon
28  v. Burch, 494 U.S. 113, 127 (1990). "[T]he government's discretion to incarcerate non-citizens is

always constrained by the requirements of due process." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Substantive due process protects individuals from government action that interferes with fundamental rights. See Regino v. Staley, 133 F.4th 951, 959-60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" Id. at 960 (citing Reno, 507 U.S. at 302). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690. Substantive due process thus protects noncitizens from arbitrary confinement by the government, which violates a noncitizen's substantive due process rights except in certain "special and narrow nonpunitive circumstances where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Id. at 690 (internal quotations omitted) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992); Kansas v. Hendricks, 521 U.S. 346, 356 (1997)).

Even if the Court were to accept the government's new reading of § 1225(b)(2), it would still be faced with Petitioner's due process challenge to his detention without the opportunity for release on bond. Indeed, the Ninth Circuit has questioned the constitutionality of § 1225(b):

> We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so. Arbitrary civil detention is not a feature of our American government.

Rodriguez v. Marin, 909 F.3d 252, 256–57 (9th Cir. 2018) (alteration in original).

Respondents fail to address Petitioner's challenge to the lawfulness of his detention under the Due Process Clause. The Court now turns to the likelihood of success on the merits of Petitioner's procedural and substantive due process challenge.

1. Procedural Due Process

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland,

53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor considers the private interest affected by the government's ongoing detention of Petitioner without the opportunity for release on bond. See Mathews, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted).

Additionally, Petitioner's liberty interest is not diminished by any final order of removal, or the availability of any existing process to challenge Respondents' decision to detain him without bond. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing, and had additional process available to him through a further bonding hearing before an IJ upon a showing of materially changed circumstances).

Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional procedures." Mathews, 424 U.S. at 335. There are no existing procedures whatsoever for Petitioner to challenge his detention pending the conclusion of removal proceedings without the opportunity for release on bond. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner without any

1   individualized showing of why his detention is warranted, nor any process for Petitioner to
2   challenge the exercise of that discretion. The likelihood of erroneous deprivation caused by this
3   lack of process is demonstrated by numerous prior cases before this Court where an IJ held a bond
4   hearing for a petitioner prior to Hurtado and found that the government had not established a
5   justification for detention. See, e.g., Escobar Salgado, 2025 WL 3205356; Aparicio v. Noem, No.
6   2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Berto Mendez v. Noem,
7   No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025). Likewise, given that
8   Petitioner has no criminal convictions, has deep financial, familial, and community ties in the
9   country, and that Respondents have not asserted he is dangerous or a flight risk, it is very likely
10  that he is being arbitrarily and unjustifiably deprived of his liberty.

11   The additional procedures afforded under § 1226(a), including an individualized custody
12  redetermination by an immigration judge, *i.e.*, a bond hearing, substantially mitigate the risk of
13  erroneous deprivation of Petitioner's liberty, because those procedures require the government to
14  establish that Petitioner presents a flight risk or danger to the community. This would account for
15  the constitutional requirement that "once the flight risk justification evaporates, the only special
16  circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's
17  dangerousness." Zadvydas, 553 U.S. at 691-92. An adverse decision by an immigration judge in a
18  bond hearing can further be appealed, and Petitioner could seek additional custody
19  redeterminations based on changed circumstances, such that the outcome of a bond hearing would
20  be subject to "numerous levels of review, each offering [Petitioner] the opportunity to be heard by
21  a neutral decisionmaker." Rodriguez Diaz, 53 F.4th at 1210 (finding the bond hearing procedures
22  available through the implementing regulations of § 1226(a) would render "the risk of erroneous
23  deprivation . . . relatively small.") (citation omitted). As such, the second Mathews factor also
24  weighs heavily in favor of granting Petitioner the procedural protections under § 1226(a).

25   The third and final Mathews factor considers the "Government's interest, including the
26  function involved and the fiscal and administrative burdens that the additional or substitute
27  procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the
28  government's interests in enforcing immigration laws, including "protecting the public from

dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest order." Rodriguez Diaz, 53 F.4th at 1188-89. These interests are in fact served by the individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures. In failing to articulate any individualized reason why detaining Petitioners is necessary to enforce immigration law, the question arises "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." Demore, 538 U.S. at 532–33 (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a person's liberty.

Further, the Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk through existing bond procedures serves the government and public's interest by *reducin*g the fiscal and administrative burdens attendant to immigration detention. Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 that "the costs to the public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

In sum, the Court finds the Mathews factors weigh heavily in factor of Petitioner, and therefore, his detention without the opportunity for release on bond likely violates his procedural due process rights.

2. Substantive Due Process

Immigration detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690.

Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of his physical liberty. Such indifference from the executive branch to the Constitution's guarantee of freedom from arbitrary

detention is grave cause for concern. Accordingly, this Court further finds that Petitioner is likely being detained in violation of his substantive due process rights.

### D. Irreparable Harm

The next factor requires a showing "that irreparable harm is likely, not just possible" in the absence of an injunction. All. for the Wild Rockies, 632 F.3d at 1131. Petitioner clearly faces irreparable harm in the absence of judicial intervention. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Thus, it follows "inexorably" from this Court's conclusion that Petitioner's detention without a bond hearing likely violates his due process rights that Petitioner has carried his burden as to irreparable harm. Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). The Ninth Circuit has further recognized, in concrete terms, the irreparable harms "imposed on anyone subject to immigration detention (or other forms of imprisonment)." Id. In the absence of relief, "harms such as these will continue to occur needlessly on a daily basis." Id.

### E. Balance of Equities and Public Interest

The remaining two factors for a preliminary injunction—the balance of equities and public interest—"merge" when the government is the opposing party. Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (quotations omitted). When "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Hernandez, 872 F.3d at 996 (quoting Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009)). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA).

The Court further finds that the government's interest in enforcing immigration law is adequately protected by the bond hearing process, and its ability to present individualized evidence regarding its contention that prolonged detention of Petitioner is warranted to an IJ. The Court

1  merely enjoins Respondents from asserting Petitioner is subject to mandatory detention under 8
2  U.S.C. § 1225(b)(2), pursuant to its obligation to interpret the relevant statutory provisions of the
3  INA "independent of influence from the political branches." Loper Bright Enters. v. Raimando,
4  603 U.S. 369, 385 (2024). Moreover, it is the government's new reading of the INA which upends
5  decades of consistent agency practice, and subjects millions of individuals to mandatory detention,
6  that is creating the significant fiscal and administrative burden on the government. However, this
7  is a burden of its own choosing.

8       In contrast, the hardships faced by Petitioner and the public interest in issuing an injunction
9  weigh strongly in his favor. Detention has separated Petitioner from his family, employment, and
10 community and imposed increased financial and emotional burdens on his fiancée, children, and
11 extended family. Hernandez, 872 F.3d at 996 ("in addition to the potential hardships facing [the
12 plaintiff] in the absence of the injunction, the court may consider the indirect hardship to their
13 friends and family members) (quotation marks and citation omitted). Both Petitioner and his family
14 members are struggling due to his detention. His eldest son—an American citizen—in particular
15 has suffered in the absence of his father, stating in his letter of support: "My dad is the only person
16 I have and I need him to survive . . . . I haven't been able to sleep, and I haven't been eating
17 correctly . . . . I [am] only 12 years old and I need my country, I need my father[.]" ECF No. 15 at
18 184.

19      Because the Court has found it is likely that Respondents are unlawfully detaining
20 Petitioner under § 1225(b)(2), "neither equity or the public interest are furthered" by allowing
21 Respondents' violation of the INA to continue—quite the opposite. Galvez, 52 F.4th at 832;
22 Hernandez, 872 F.3d at 996 ("The public interest benefits from an injunction that ensures that
23 individuals are not deprived of their liberty and held in immigration detention because of . . . a
24 likely unconstitutional process."). As such, this Court finds the balance of the equities and public
25 interest "tip sharply towards" Petitioner. All. For the Wild Rockies, 632 F.3d at 1127. Therefore,
26 even under a lesser showing that Petitioner has raised only "serious questions going to the merits"
27 of his challenge to his detention, Petitioner is entitled to a preliminary injunction.
28      ///

### F. Scope of Relief

Injunctive relief "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court." E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 680 (9th Cir. 2021) (cleaned up). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown[.]" Id. (citation omitted). The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "Its mandate is broad with respect to the relief that may be granted." Id. "It provides that '[t]he court shall ... dispose of the matter as law and justice require.'" Id. (quoting 28 U.S.C. § 2243).

The Court finds that the specific harm suffered by Petitioner—detention without a statutorily required and constitutionally adequate bond hearing—is remedied by granting his request for a bond hearing under 8 U.S.C. § 1226(a) within seven days and enjoining Respondents from denying bond on the basis that he is detained under § 1225(b)(2). The Court sets a seven-day deadline because it finds Petitioner has been unlawfully detained for over ten weeks. The Court finds that if a bond hearing is not provided promptly, no later than November 26, 2025, Respondents must release Petitioner until it is determined that his detention is warranted under § 1226(a). See, e.g., Lopez-Campos v. Raycraft, No. 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025) (ordering immediate release or a bond hearing within seven days); Velasquez Salazar v. Dedos, No. 25-cv-835, 2025 WL 2676729, at *9 (D.N.M. Sept. 17, 2025) (ordering a bond hearing or release within seven days); Salazar v. Dedos et al, No. 1:25-CV-00835-DHU-JMR, 2025 WL 2676729 (D.N.M. Sept. 17, 2025) (ordering similar relief); Kostak v. Trump, No. CV 3:25-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025) (same).

### G. Bond

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d

1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation modified) (quoting Jorgensen, 320 F.3d at 919). Respondents have not argued that providing Petitioner a bond hearing under 8 U.S.C. § 1226(a) will be costly. Therefore, the Court declines to impose bond beyond any bond amount imposed by an IJ under § 1226(a).

## VI.   CONCLUSION

Based on the foregoing **IT IS HEREBY ORDERED** that Petitioner's Motion for a Preliminary Injunction (ECF No. 2) is **GRANTED.**

**IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within **seven (7) days**, no later than **November 26, 2025**.

**IT IS FURTHER ORDERED** that Respondents are enjoined from denying Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

**IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by **November 26, 2025**, Petitioner shall be released until it is determined that his detention is warranted under 8 U.S.C. § 1226(a).

**IT IS FURTHER ORDERED** that the parties shall file a join status report by **December 1, 2025**. The status report shall detail if and when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**DATED:** November 19, 2025.

  
_____  
RICHARD F. BOULWARE, II  
UNITED STATES DISTRICT JUDGE